IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERI EASTBURN,

        Plaintiff,                                CV 06-261-ST

    v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

        FINDINGS AND RECOMMENDATION

        Defendant.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Teri Eastburn ("Eastburn"), brings this action for judicial review of a final decision of the Commissioner[1] determining that her benefits were stopped due to substantial gainful activity, that she was overpaid more than $35,000 in Social Security Disability Income

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. He is substituted as the defendant in this action pursuant to FRCP 25(d)(1) and 20 USC § 405(g).

1 - FINDINGS AND RECOMMENDATION

("DIB") for September through November 1998, and January 2000 through October 2002, and that she is not eligible for ongoing DIB payments. This court has jurisdiction under 42 USC §§ 405(g) and 1383(c). For the reasons below, the Commissioner's decision should be reversed, and this case should be remanded for further administrative proceedings.

## BACKGROUND

Eastburn was born in 1959.[2] The Social Security Administration ("SSA") found Eastburn disabled from mental impairments and entitled to DIB under Title II of the Social Security Act, with an onset date of January 19, 1993. Tr. 118.[3]

On September 17, 2002, Eastburn was contacted by the SSA and notified that the extent of her work activity and earnings suggested that she was no longer disabled and that a new application was required for benefits to start again. Tr. 57-60. She was told that if she continued to have health problems that met SSA rules, her Medicare coverage would continue for at least 93 months after her trial work period. Tr. 59.

On November 25, 2002, the SSA sent Eastburn a Notice of Cessation of Benefits informing her that her benefits would be stopped due to substantial gainful work activity ("SGA") and alleging that she had been overpaid DIB in the amount of $35,046.90 for the period September through November 1998, and January 2000 through October 2002. Tr. 54-56, 72-74.

On January 28, 2003, Eastburn filed a Request for Reconsideration and for continuing benefits. Tr. 75-78. That request was denied on February 8, 2003. Tr. 79-81. On April 11, 2003, Eastburn requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 89.

---

[2] In accordance with Local Rule 10.3(a)(3), only the relevant year is given.

[3] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

On July 18, 2003, the SSA issued a letter to Eastburn informing her that her DIB payments would continue because the medical evidence in her case showed that her condition continued to be disabling. Tr. 91-92.

On June 7, 2004, a hearing convened, but was adjourned in order to obtain updated medical records. Tr. 376-92. On September 20, 2004, the hearing continued. Tr. 393-432. On October 13, 2004, the ALJ signed a Notice of Decision - Unfavorable, finding that Eastburn's disability ceased in January 2000 due to her performance of SGA after the completion of her trial work period and the conclusion of her extended period of eligibility. Tr. 21-28.

Eastburn requested review by the Appeals Council, which denied the request, finding no reason to review the ALJ's decision. Tr. 12-17. The Appeals Council's decision became the final decision of the Commissioner.

## **THE ALJ's FINDINGS**

Because Eastburn had engaged in SGA after her alleged onset date of disability, the ALJ found that she was not disabled. He also noted that the determination to cease Eastburn's DBI payments resulted in a substantial overpayment of benefits of $35,046.90, but made no decision as to whether Eastburn was entitled to a waiver of her repayment obligation.

## **STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it applies the proper legal standards and is supported by substantial evidence in the record. 42 USC § 405(g); *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

3 - FINDINGS AND RECOMMENDATION

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986) (citations omitted). If substantial evidence supports the Commissioner's decision, then it must be affirmed. *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001) ("the court may not substitute its judgment for that of the Commissioner"). This result is mandated even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F3d at 1039-40.

## DISCUSSION

Eastburn contends that: (1) the Commissioner has violated several provisions of the Social Security Act through gross misconduct, including the blatant falsification of documents; (2) the Commissioner violated the Privacy Act by not securing important information; (3) the SSA failed to provide reasonable accommodations in order to secure a full and fair hearing at all levels of the appeal process; (4) the ALJ's finding is not supported by substantial evidence or accurate information; (5) the ALJ failed to address the issues of overpayment and continuing benefits, denying Eastburn the right to a full and fair hearing; (6) and the SSA's statement dated July 18, 2003, proves her entitlement to continuing benefits.

**I.    SGA**

    **A.    Legal Standard**

After determining that a person is disabled, the Commissioner must evaluate the claimant's impairments "from time to time to determine if [the claimant is] still eligible for disability cash benefits." 20 CFR § 404.1589. The claimant is notified that this "continuing disability review" could result in the termination of benefits. *Id*. The SSA must generally determine whether there has been any medical improvement in the claimant's impairments and,

if so, whether the medical improvement is related to the claimant's ability to work. 20 CFR § 404.1594(a). However, disability also can be found to have ended, even without medical improvement, where the claimant engages in SGA. 20 CFR § 404.1594(a) & (d)(5).

SGA is a "work activity that is both substantial and gainful" and requires significant physical or mental activity. 20 CFR § 404.1572. Work activity may be substantial even if it is done on a part-time basis or if a claimant does less, gets paid less, or exercises less responsibility than in prior jobs. *Keyes v. Sullivan*, 894 F2d 1053, 1056 (9th Cir 1990); *see also Byington v. Chater*, 76 F3d 246, 249-50 (9th Cir 1996). Gainful work activity is work activity done for pay or profit, whether or not a profit is realized. 20 CFR § 404.1572(b).

A presumption that an individual is engaged in SGA is generally made if the monthly earnings averaged $500 per month or more from January 1990 through June 1999; $700 per month or more from July 1999 through December 2000; $740 per month in 2001; and/or $780 per month from January 2002 to the present, based on the Earning Guidelines in the Social Security Act. 20 CFR § 404.1574(b)(2)(i)-(iii).

An exception to the SGA rules is the "trial work period," a period of time during which Title II beneficiaries may attempt to work while still receiving benefits. 42 USC § 422(c); 20 CFR § 404.1592(a). The regulations prohibit the use of trial work to determine that a claimant's disability has ended prior to the end of the trial work period. 20 CFR § 404.1592(a); *see also Johnson v. Sec'y of HHS*, 948 F2d 989, 991-92 (6th Cir 1991). The trial work period begins with the month in which an individual becomes entitled to benefits. 42 USC § 422(c)(3). It ends after the ninth month in which the beneficiary has been performing "services," but the nine months need not be consecutive. 20 CFR § 404.1592(a). A beneficiary performs "services"

for purposes of a trial work period in a particular month if her net earnings in that month exceed $200. 20 CFR § 404.1592(b)(1)(i), Table 1.

An extended period of eligibility called the "reentitlement period" lasts for 36 months after the end of the trial work period regardless of whether the beneficiary is working. 20 CFR § 404.1592a(b)(ii). During the reentitlement period, the beneficiary is not entitled to benefits during the months in which she works at SGA levels (with the exception of the first month and the two months which follow the first month), but is entitled to benefits during months in which she does not work without having to file a new application. 20 CFR § 404.1592a.

After the reentitlement period, the beneficiary's disability payments are terminated completely if she performs SGA. 20 CFR § 404.1592a(3)(i) and (ii).

B.  Analysis

Eastburn contends that the ALJ erred by finding that she was not eligible for DIB. The issue is whether this finding is supported by substantial evidence.

1.  Trial Work Period

The ALJ found that Eastburn had a trial work period from November 1994 through February 1995, and from August 1995 through December 1995. Tr. 24. Eastburn generally argues that her work for the months of November 1994 and February 1995 does not constitute "services" counting towards the trial work period because she earned under the $200 per month threshold set out in 20 CFR § 404.1592(b)(1)(i). However, she has submitted no evidence to contradict the Commissioner's determination that she earned $590.63 in November 1994 and $990 in February 1995. Tr. 40. In her letter to the Appeals Council, she specifically contended that her earnings were below $200 a month after deducting her impairment-related work

expenses ("IRWE"), consisting of bills from doctors and medications necessary for her ability to work.  Nevertheless, the ALJ correctly stated that IRWE are not deducted when computing a claimant's earnings for purposes of determining whether her work was "services" counting towards the trial work period.  *See* 20 CFR § 404.1576(f)(2).

Since Eastburn earned over $200 a month in November 1994 and February 1995, and none of her IRWE can be deducted, the work she performed during these months constitutes services counting towards her trial work period.  With respect to the IRWE during the trial work period, Eastburn also complains that SSA sent her outdated forms which erroneously declared that the monthly threshold for trial work services was $75 instead of $200, that she filed documents proving her IRWEs with the SSA office in Sonora, California, that these documents are missing from the record and that the ALJ failed to follow his duty to develop the record to obtain these documents.  Even if Eastburn is correct, these issues are inconsequential to the determination of the trial work period.

Eastburn contends that the Commissioner admitted that her trial work period started in November 1994 and ended in February 1995, a four-month period that would not qualify under the guidelines to end her trial work period.  However, the record clearly reveals that her trial work period lasted from November 1994 to February 1995 *and* from August to December 1995.  Tr. 40, 82.

        2.    **Reentitlement Period**

Because Eastburn provided services for nine months (November 1994 to February 1995, and August 1995 to December 1995), her trial work period ended in December 1995.  Her

reentitlement period then ran for 36 months from the end of the trial work period, encompassing January 1996 to December 1998.

The ALJ determined that during the reentitlement period, Eastburn performed SGA from June 1998 to November 1998 as she earned more than $500 per month during these months. Tr. 24, 82; *see* 20 CFR § 404.1574, Table 1. In computing the earnings during Eastburn's reentitlement period, SSA deducted small monthly amounts ($15-$30) for IRWE. Tr. 40. The only document in the administrative record supporting any IRWE is Eastburn's Work Activity Report dated August 10, 2001 for two months work in 2001. Tr. 148. Nothing in the record reveals how the SSA calculated the IRWE for June through November 1998.

Eastburn alleges that her earnings from 1998 do not reflect the correct deductions for IRWE. She testified that she hand-delivered supporting documentation of her monthly IRWE expenses to an SSA office in California, but that they do not appear in her administrative record. Tr. 425. That occurred in "approximately 1998" (or more likely 1999) after receiving a letter stating that she had successfully completed her trial work period. Tr. 77. Eastburn did not offer to replace these documents in the record and the ALJ did not attempt to locate them. Instead, she testified that when she was working "in '96 and so forth when [she] was on medication, [her] medication ran [her] about $700 a month." *Id*. According to Eastburn, at the beginning of her disability in 1993, she took Lithium ($300 a month), but due to its toxicity had to switch to Depakote ($400 a month), and was also taking other medications, none of which were reimbursed by Medicare. Tr. 425-26.

In a letter to the Appeals Council, Eastburn stated that at the administrative hearing she "came prepared with a rolling suitcase and a brief case full of documentation" such as "related

doctor bills that are supposed to be reasonable [IRWE] deductions, since without those services, [she] would have not been able to work," and waited for the ALJ to ask for such documentation, which he never did. Tr. 329. Eastburn was not represented by counsel at the administrative hearing. After she presented her arguments, the ALJ asked her whether she "[had] anything else." Tr. 426. She answered by further discussing some of her claims and ended by stating:

>     A. . . . So I guess that would be it.
>     Q. Okay.
>     A. Unless you need anymore [sic] documents from me about my mental condition.
>     Q. Let's talk to the Vocational Expert a moment.

Tr. 427-28.

After the testimony of the Vocational Expert, the ALJ stated that he would take the matter under advisement and send Eastburn a copy, to which she replied "[o]kay." Tr. 431. The ALJ then said "[n]othing further, we'll go ahead and close the record." *Id*. This could well have led Eastburn to reasonably conclude that the ALJ did not need or want to see any further documentation from her.

Based on the record, this court is unable to ascertain whether the ALJ properly calculated the IRWE amounts for the reentitlement period. Neither the IRWE amounts deducted by the SSA nor those alleged by Eastburn are supported by any documentation in the record. The ALJ did correctly note that Eastburn's IRWEs "would have to be significantly increased (*e.g.* to $250 in June 1998) to result in a finding that work activity for those months did not constitute substantial gainful activity." Tr. 26. He also noted that Eastburn "reported to an evaluating psychologist in July 2003 that she stopped taking psychiatric medications in 1997." Tr. 26. If true, the expensive medications would be eliminated from any IRWE in 1998. However,

Eastburn in fact told her psychologist that she stopped psychiatric medications "for the most part" in 1997, permitting an inference that she took some of those medications in 1998. Tr. 317. In any event, the ALJ did not attempt to determine whether and what amount of Eastburn's medical bills and other medication costs could be considered deductible IRWE amounts during the reentitlement period.

The ALJ has a duty to fully and fairly develop the record and to assure that the claimant's interests are considered. *Brown v. Heckler*, 713 F2d 441, 443 (9th Cir 1983) (citation omitted). The duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F3d 453, 459-60 (9th Cir 2001) (citation omitted). The ALJ must be especially diligent in exploring all the relevant facts when the claimant is not represented by counsel. *Widmark v. Barnhart*, 454 F3d 1063, 1068 (9th Cir 2006) (citations omitted).

Eastburn was not represented by counsel at the administrative hearing and continues to be unrepresented. Since she was challenging the SSA calculations for IRWE deductions during the reentitlement period, the ALJ should have developed the record to obtain copies of the documents relied upon by the SSA, as well as to try to ascertain whether, in fact, Eastburn had provided documentation of higher IRWE, as she claimed, and if so, what happened to that documentation and whether she still had copies. This was especially necessary given that Eastburn presented evidence that 10 other people's names and social security numbers were in her own file (Tr. 358-60, 427), raising the question of whether her own IRWE supporting documentation may have been misplaced in someone else's file. Therefore, a remand for further

administrative proceedings is necessary in order to develop the record in order to attempt to determine the amount of IRWE during the reentitlement period.

### 3.     After Reentitlement Period

Because Eastburn did not perform SGA from December 1998 to December 1999, her disability payments were reinstated without the need for a new application.[4]  20 CFR § 404.1592a(3)(i).  The ALJ found that January 2000 was the first month that Eastburn performed SGA after the reentitlement period ended.

The process for determining whether a claimant engaged in SGA after the reentitlement period differs depending on whether the claimant's disability ceased during the reentitlement period because of SGA.  If a claimant's disability ceases during the reentitlement period because of SGA, then the Commissioner will determine whether the claimant engaged in SGA after the reentitlement period by considering *only* the claimant's work in or earnings for that month without applying provisions regarding unsuccessful work attempts, averaging of earnings, *etc*.  20 CFR § 404.1592a(3)(i).  If, however, the claimant's disability did not cease during the reentitlement period, then the Commissioner will determine whether the claimant engaged in SGA after the reentitlement period by considering the earnings *and* by applying the provisions for averaging earnings, unsuccessful work attempts, deducting IRWE for that period, *etc*.  20 CFR § 404.1592(a)(3)(ii).

The determination of whether Eastburn engaged in SGA after her reentitlement period depends entirely on the ALJ's findings on remand after further administrative proceedings.

---

[4] Eastburn did not work at all between December 1998 and June 1999, and worked below the $700 a month SGA Earning Guidelines from July 1999 to December 1999.  Tr. 84.

11 - FINDINGS AND RECOMMENDATION

If, after developing the record, the ALJ again decides that Eastburn performed SGA during the reentitlement period, then her earnings for January 2000 place her above the SGA level, rendering her no longer eligible for DIB payments under 20 CFR § 404.1592a(3)(i). In that case, in order to receive DIB benefits, Eastburn would have to file a new application. If, however, on remand the ALJ decides that the Commissioner should not have ceased Eastburn's disability during the reentitlement period because the IRWE deductions are high enough to make her earnings fall under the SGA level, then the ALJ will have to consider Eastburn's January 2000 earnings in conjunction with the provisions in 20 CFR §§ 404.1571-1576 for averaging earnings, unsuccessful work impairments and deducting IRWE for the relevant month(s) in order to decide whether her DIB payments should cease because of SGA under 20 CFR § 404.1592a(3)(ii).

## II.     Other Issues

This court has no jurisdiction to decide whether the Commissioner is responsible for violations of the Privacy Act. While other claimants' names and social security numbers should not have appeared in Eastburn's administrative file, the only issue to be considered by this court is whether to uphold or to reverse the ALJ's finding that Eastburn is no longer entitled to DIB. Similarly, the court has no jurisdiction to decide whether certain employees of the Commissioner are responsible for the blatant falsification of documents, as well as whether other violations of the Social Security Act occurred, such as the violation of the SSA Employee Rules of Conduct.

During the administrative hearing, the ALJ noted that Eastburn is entitled to seek a waiver of the recovery of DIB overpayment, but found that the issue of waiver was not before him. Tr. 27. Under 20 CFR § 404.506(h), a claimant whose waiver application is denied may request reconsideration of the decision. A hearing before an ALJ will be held only if the

claimant or another party to the hearing files a written request for a hearing. 20 CFR § 404.930. Eastburn claims that when she filed her request for a hearing, she also asked that the issue of overpayment be decided at the hearing. Whether Eastburn was overpaid benefits depends on the ALJ's decision upon further investigation on remand. Should the ALJ find in the Commissioner's favor, then, for the sake of administrative efficiency, the ALJ should also decide whether Eastburn is entitled to such a waiver.

Eastburn also points to the SSA's letter dated July 18, 2003, informing her that her DIB payments would continue because the medical evidence in her case showed that her condition continued to be disabling. Tr. 91-92. She claims that this letter is proof that she is entitled to receive continuing benefits despite the cessation of benefits due to SGA. As correctly explained by the Appeals Council, this letter was simply a determination that Eastburn continued to have an impairment of a severity which would allow her to remain eligible for Medicare for a 93-month period following her trial work period, and unfortunately was written by an SSA employee who apparently did not realize that Eastburn's DIB had been previously terminated due to SGA. Tr. 13.

## **RECOMMENDATION**

Based on the foregoing, the Commissioner's decision should be REVERSED and this case should be REMANDED to the Commissioner pursuant to Sentence Four of 42 USC § 405(g) for further proceedings to determine Eastburn's IRWE during the reentitlement period and, if appropriate, whether she is entitled to any waiver of any overpayment obligation.

///

///

**SCHEDULING ORDER**

Objections to the Findings and Recommendation, if any, are due by April 16, 2007. If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 28th day of March, 2007.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge